**SO ORDERED.**

**SIGNED this 11 day of May, 2006.**



_____
**ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RICKY J. STEELE, | ) | Case No. 04-10297 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| LINDA S. PARKS, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 04-5329 |
| | ) | |
| BARBARA SCOTT, | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Nature of Case

The chapter 7 trustee filed this adversary proceeding pursuant to 11 U.S.C. § 548(a) to avoid an alleged fraudulent transfer by debtor Ricky Steele ("Steele") to defendant Barbara Scott ("Scott")

1

of Steele's interest in a Ford F150 pickup, a boat and a trailer (collectively referred to as the "Property"). Steele and Scott are not married but have lived together as domestic partners on and off for ten years. The Property was purchased with money borrowed by Scott, a trade-in of Scott's truck, and a trade-in of Steele's truck. The Property was titled prepetition in Scott's and Steele's names but shortly before filing bankruptcy Steele transferred his interest in the Property to Scott. The trustee seeks to avoid this transfer as fraudulent under § 548(a) as a transfer of debtor's property without receipt of reasonably equivalent value while debtor was insolvent. This case requires the Court to determine whether Steele had an interest in the Property he transferred to Scott and the extent of that interest, if any. The case was tried on March 14, 2006 with the parties stipulating to the admission of all exhibits and to the facts set forth in the final pretrial conference order.[1] The Court took the matter under advisement and is now ready to rule.

Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1) and § 1334(b).

Findings of Fact

The Court makes the following findings of fact from the stipulations of the parties and the evidence presented at trial.

Steele and Scott have lived together as domestic partners for approximately ten years, except for intermittent periods when Steele struggled with a cocaine addiction. When he worked, Steele worked in the construction industry. Scott is a self-employed mental health provider. Scott largely supported Steele during his periods of unemployment and drug relapse.

---

[1] Dkt. 27.

Steele and Scott purchased the truck, boat and trailer in June 2003 for recreational use. The boat and trailer were purchased off E-Bay and Steele, Scott, and Scott's son traveled to Phoenix, Arizona to pick up the boat and trailer. While in Phoenix, Scott was called to Florida to attend to her ailing father. Steele and Scott's son drove the boat and trailer back to Dodge City while Scott was in Florida. Upon returning to Dodge City, Steele titled the trailer and registered the boat in both his and Scott's name. Scott paid for the boat and trailer with funds she borrowed from Centera Bank. Scott has insured the boat, made payments on the Centera Bank note, and paid the personal property taxes.

Steele and Scott purchased the Ford F150 pickup from DeLissa Ford in Meade, Kansas to pull the trailer and boat. Steele picked up the truck at the dealership because Scott was at work. Scott had made previous arrangements to buy the truck and secure the loan proceeds from Centera Bank. The sales invoice indicates the truck was sold to "Ricky Steele or Barbara Scott."[2] Steele signed the sales invoice. Steele traded in a 1990 Ford F150 pickup with a $4,000 trade-in allowance and Scott traded in a 1992 Ford Explorer with a $500 trade-in allowance. The balance of the purchase price was paid by Scott with funds borrowed from Centera. Steele returned with the pickup to Dodge City and at the courthouse completed the paperwork on the pickup and titled the pickup in both his and Scott's name.

Both Steele and Scott used the Property. Scott testified that she learned that the Property had been titled in hers and Steele's name shortly after it occurred. She was not that concerned about it at the time because "things were good" and she would take care of it later. Scott did not want Steele on the title to the Property, however, because she feared that Steele, a recovering drug addict, might

---

[2] Ex. B.

have a relapse and sell the Property for drug money. Scott became concerned when she knew Steele was going to file bankruptcy.

In December 2003, Steele transferred his interest in the Property to Scott so that she became the sole owner. The parties stipulate that Steele was insolvent at the time of the transfer and received no value for the transfer. The parties also stipulate that the Property was free and clear of liens and valued the Property as follows: Ford F150 - $19,000; boat - $8,000; trailer - $1,000.

Steele filed his chapter 7 bankruptcy petition on January 23, 2004. Consistent with Scott's testimony at trial, Steele candidly admits that he is a recovering drug addict and explains his reason for the transfers in Question 10 of his Statement of Financial Affairs: "There was a concern that Mr. Steele would liquidate his interest in the asset and dedicate such to recreational drug usage."

Analysis

11 U.S.C. § 548(a)(1)(B), as it existed pre-BAPCPA and applicable here, provides in relevant part:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily – . . . received less than reasonably equivalent value in exchange for such transfer or obligation; and . . . was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .[3]

The trustee has the burden to prove four elements to prevail on its fraudulent transfer claim under § 548(a)(1)(B): (1) debtor had an interest in property; (2) debtor transferred that interest within one year of the bankruptcy petition; (3) debtor was insolvent at the time of the transfer; and (4) debtor

---

[3] 11 U.S.C. § 548 (Thomson/West 2004)

received less than reasonably equivalent value in exchange for the transfer.[4] Section 548(a)(1)(B) is a constructive fraud theory and does not require the trustee to establish any particular intent.[5]

Given the parties' stipulations regarding the date of the transfers, insolvency, and value[6], the issue here is limited to whether, and to what extent, the debtor Steele had an interest in the Property he transferred to Scott in December of 2003.

The determination of property interests in bankruptcy begins with an analysis of appropriate state law.[7] Prior to bankruptcy, Steele and Scott were each shown as owners on the truck and trailer title.[8] The Court must first determine whether Steele and Scott were joint tenants or tenants in common. KAN. STAT. ANN. § 58-501 (2005) changed the common law rule in favor of joint tenancies.

> Real or personal property granted or devised to two or more persons including a grant or devise to a husband and wife shall create in them a tenancy in common with respect to such property unless the language used in such grant or devise makes it clear that a joint tenancy was intended to be created . . .

---

[4] *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 535 (1994) (elements of a constructively fraudulent transfer).

[5] *See In re Fruehauf Trailer Corp.*, 444 F.3d 203 (3rd Cir. 2006).

[6] *See Stillwater Nat'l Bank & Trust Co. v. Kirtley (In re Solomon),* 299 B.R. 626, 638 (10th Cir. BAP 2003) (Indirect benefits that are not quantifiable do not constitute value.); *In re Newman,* 203 B.R. 468, 473-74 (D. Kan. 1996) (Debtors received no quantifiable economic benefit from their church donations.); *Zubrod v. Kelsey (In re Kelsey)*, 270 B.R. 776, 781-82 (10th Cir. BAP 2001).

[7] *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceedings.").

[8] The Court specifically notes that the parties did not stipulate that Steele and Scott held the Property as joint tenants or tenants in common; instead they stipulated that Steele and Scott "were the title owners." *See* Dkt. 27, ¶ 6A and ¶6C.

5

Under this statute, a tenancy in common is created when real or personal property is granted to two or more persons, unless the language and evidence clearly shows an intent to create a joint tenancy.[9] Here, the Court's ability to determine whether Steele and Scott intended to create a joint tenancy in the Property is limited by the evidentiary record. Neither certificate of title for the trailer or the pickup as it existed before the transfer to Scott were offered. The parties have supplied records from the Division of Motor Vehicles but all these show are that Steele and Scott were both listed as owners on the trailer and pickup.[10]

As a legal proposition, it does not matter whether Steele and Scott held the Property in joint tenancy or tenancy in common for the purpose of determining the extent of Steele's interest. In both forms of co-ownership, there is rebuttable presumption of equal ownership in the property.[11] The party attacking the presumption of equal ownership assumes the burden of proof of the degree and

---

[9] *See In re Estate of Fast,* 169 Kan. 238, 242, 218 P.2d 184 (1950). *See also, In re Estate of Wood,* 218 Kan. 630, 545 P.2d 307 (1976) (Where certificate of deposits did not contain "magic words" ("as joint tenants with right of survivorship and not as tenants in common") to clearly establish a joint tenancy, parol evidence admissible to show grantor's intent.).

[10] *See* Ex. 2 and 3.

[11] *See Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 574 P.2d 1382 (1978) (Once joint tenancy was severed, parties became tenants in common and a rebuttable presumption of equal ownership between the cotenants existed.); *In re Crouch C Stores, Inc.*, 120 B.R. 178, 180 (1990) (The is a presumption of equal ownership among parties created by joint tenancy); *In re Griffin*, 141 B.R. 207, 211 (Bankr. D. Kan. 1992) (Rebuttable presumption of equal ownership arises where tenancy in common exists; K.S.A. 58-501 dictated that wife's interest in non-exempt farm equipment was as a co-tenant.); *Purma v. Stark*, 224 Kan. 642, 585 P.2d 991 (1978) (rebuttable presumption that the joint owners of a joint bank account own the same in equal ownership); *Brewer v. Schalansky*, 278 Kan. 734, 102 P.3d 1145 (2004) (rebuttable presumption of equal ownership in joint tenancy property); *Campbell v. Black*, 17 Kan. App. 2d 799, 844 P.2d 759 (1993) (Presumption of equal ownership resulting from creation of tenancy in common was rebutted where all the money in bank accounts belonged to one of the tenants.).

extent of the cotenant's interest.[12] The Kansas Supreme Court has observed that a material, but not dispositive, element of this proof is who paid for the property.[13]

As applied to the facts of this case, the Court concludes that Scott has met her burden to rebut the presumption of equal ownership of the Property. The evidence established that Steele used the pickup as his own and contributed $4,000, the trade-in value of his pickup, to the purchase of the F150 pickup. This is the extent of Steele's interest in the pickup.[14] With respect to the boat and trailer, Scott purchased them solely with her own funds. She also paid for the insurance and personal property taxes on these items. Although Steele used the boat and trailer, Scott testified that registration and title was placed in Steele's name for convenience purposes so that Steele and Scott's sons could use the property during her absence. Scott intended to own the property. As to the boat and trailer, Steele had bare legal title and therefore, these items would not have been property of the estate in the absence of the transfers.[15]

In order to prevail on her § 548(a)(1)(B) complaint, the Trustee had to demonstrate by a preponderance of the evidence that Steele had an interest in the property he transferred and that he received a reasonably equivalent value for the transfer. Because Steele's actual property interest

---

[12] *Walnut Valley State Bank v. Stovall*, 223 Kan. at 461; *In re Crouch C Stores, Inc.*, 120 B.R. at 180; *Purma v. Stark*, 224 Kan. at 645 (Whether the account is held as tenants in common or in joint tenancy, the only interest in the account that can be reached by a garnishment is the interest actually owned by the garnishment debtor.).

[13] *Walnut Valley State Bank v. Stovall*, 223 Kan. at 463; *In re Crouch C Stores, Inc.*, 120 B.R. at 180.

[14] *See In re Taylor*, 1133 F.3d 1336 (10th Cir. 1998) (bankruptcy estate was entitled to money judgment against debtor's spouse for one-half of jointly owned vehicle that was traded in for vehicle titled in spouse's name alone)

[15] *See In re Crouch C Stores, Inc.,*, 120 B.R. at 180-181; 11 U.S.C. § 541(d).

7

was limited to the $4,000 he contributed to the purchase of the Ford F150 pickup, and because he received no consideration for its transfer, all that the Trustee is entitled to recover from Scott is Steele's $4,000 equity in the pickup. As noted above, Steele only held bare legal title at best to the boat and trailer and he cannot be said to have received less than reasonably equivalent value in exchange for his prepetition transfer of that bare title to Scott.

JUDGMENT should therefore be entered in favor of the Trustee in the amount of $4,000, Steele's equitable interest in the Property fraudulently transferred, together with the costs of this action. A Judgment on Decision shall issue this day.

# # #

8